CITY OF PEARLAND, Appellant,

v.

John ALEXANDER, as Independent Executor, etc., et al., Appellees.

No. 15715.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 22, 1971.

Rehearing Denied July 1, 1971.

Sears & Burns, Robert L. Burns, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Fred M. Lange, William H. Young, Houston, for appellee John Alexander, as Independent Executor and Trustee of Estate of C. H. Alexander, Deceased.

Wiley Thomas, Angleton, for appellee Mrs. Helen Alexander.

PEDEN, Justice.

Eminent domain proceeding brought by the City of Pearland against John Alexander as independent executor and trustee of

the estate of C. H. Alexander, deceased, and against Mrs. Helen Alexander, widow of C. H. Alexander, to acquire the surface of 10 acres for a sewage disposal plant, 2.-04 acres for a public street easement, .046 acres for a pipeline easement and other areas for three temporary construction easements.

Both sides filed objections to the award of the special commissioners. After trial to a jury in the county court, a judgment was entered based on the jury findings that the market value of the 10-acre tract was $22,000., of the 2.04 acres was $4,488., that the market value of the remainder of over 810 acres was decreased by $143,000. and, based on a stipulation of the parties, that the three construction easements had a market value of $1,000. After the City's amended motion for new trial was overruled, it perfected this appeal. We affirm the judgment of the trial court.

The City's first sixteen points of error concern the trial court's having granted the landowners' motion in limine, rulings on the admissiblity of evidence related to the subject of such motion and an instruction given to the jury concerning the same matter. The provision of the motion in limine of which the City complains is:

"* * * it is legally presumed that Plaintiff will exercise its rights in regard to the entirety of the surface estate in the ten acre tract being condemned herein as Tract No. One for use as a sewerage disposal plant site, to the fullest extent and for the highest use for which it is taken, and Plaintiff is hereby prohibited from introducing any evidence to the effect that less than the full ten acres will be used for such a sewer plant."

In one of the leading cases on the subject, Perkins v. State, 150 S.W.2d 157 (Tex.Civ.App.1941, writ dism.) the court approved this passage, now found at 29A C.J.S. Eminent Domain § 155, p. 658:

"The probability that the appropriator will not exercise, or the fact that there is no present intention of exercising, to the full extent the rights acquired should not be considered in reduction of the damages, where there is nothing to prevent a full exercise of such rights, since the presumption is that the appropriator will exercise his rights, and use and enjoy the property taken, to the full extent."

As stated in Wiseman v. State, 406 S. W.2d 253 (Tex.Civ.App.1966, writ ref. n. r. e.), this rule has been consistently followed in Texas. See Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958); Creighton v. State, 366 S.W.2d 840 (Tex.Civ.App.1963, writ ref. n. r. e.); Strickland v. City of Friona, 294 S.W.2d 254 (Tex.Civ.App.1956, writ ref. n. r. e.); Hill v. State, 289 S.W.2d 801 (Tex.Civ. App., no writ). See also White v. Natural Gas Pipeline Co. of America, 444 S.W.2d 298 (Tex.Sup.1969).

It has been pointed out at both 29A C.J.S. Eminent Domain § 155, p. 658 and 7 A.L.R.2d 371 that the compensation for the owner is to be determined by the actual legal rights acquired by the condemnor and not by the use he may make of such rights.

The City did not use its right to qualify, limit or restrict the rights which it was acquiring by condemnation. It could have done this in its pleadings in such a way as to definitely restrict such rights, but this cannot be accomplished by mere promises or representations as to limitations on the use it might make or intended to make or probably would make of the part taken. Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958); Perkins v. State, supra. Nor did the City limit its right to use the 10 acre tract to its present use by introducing plans or other proof of such present use, as it could have done. 89 A.L.R. 879, 887.

A condemnee must recover all of his damages upon trial of the condemna-

tion suit. Willcockson v. Colorado River Municipal Water Dist., 436 S.W.2d 203 (Tex.Civ.App.1968, writ ref. n. r. e.), citing City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243 (1943).

■ The landowners could not have recovered later for any expansion of the first unit of the sewage disposal plant, which had already been built on the 10-acre tract when this case was tried. They could not, in seeking a later recovery, have successfully urged that the first unit was all that seemed reasonably foreseeable at the time or that the City had represented that a larger plant was not required. They had to recover in this trial for the damages to the remainder occasioned by the rights acquired by the City. City of Corpus Christi v. Polasek, 404 S.W.2d 826 (Tex.Civ.App. 1966, no writ).

■ We hold that the trial court did not err in granting the motion in limine nor in refusing to permit the City to show the uses of the 10 acre tract which were "reasonably foreseeable and reasonably probable at the time of taking." Creighton v. State, 366 S.W.2d 840 (Tex.Civ.App. 1963, writ ref. n. r. e.). Also, that the trial judge was not required to advise the City what was meant by use of the tract as a sewage disposal plant site to the fullest extent and for the highest use for which it is taken. We cannot say that the trial judge abused his discretion in admitting in evidence photographs of two Houston sewage plants when there was testimony in the record that each of them covered ten acres of land.

The appellant's fourteenth and fifteenth points complain of the trial court's refusal to submit its requested instructions No. 2 and No. 3 in connection with Special Issue No. 6, which issue was:

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally, and not peculiar to them, and connected with their ownership, use and enjoyment of the particular tract of land out of which Parcels have been condemned by the City of Pearland, and taking into consideration the uses to which the condemned parcels are to be subjected, what do you find from a preponderance of the evidence was the market value of the defendants' 810.724 acre remainder tract of land immediately after the acquisition of said parcels by the City of Pearland on March 18, 1966?

"Answer in dollars and cents."

The requested instruction No. 2 stated:

"In answering Special Issue No. 6, you are instructed that the term 'uses to which the condemned parcels are to be subjected' means use of the ten acres of land as a site for a sewage disposal plant and use of the 2.04 acres of land as a public street. Use for a sewage disposal plant includes erection and maintenance of structures for the disposal of sewage and all uses which are reasonably incidental thereto, such as open spaces for light, air, and appropriate ornamentation, landscaping, drives for vehicles and walks for pedestrians, automobile parking areas, areas for repair and replacement, storage facilities, and recreational areas for employees. Use for a public street includes the right of the public, including the defendants, to walk and drive vehicles on the street and uses incidental thereto."

■ We hold that the trial court did not err in refusing this instruction. It is not necessary for a court to instruct a jury as to what the use of the tract for a sewage disposal plant includes, and to do so would merely be to unduly emphasize the City's view of the evidence in the case.

Requested instruction No. 3 was:

"In answering Special Issue No. 6 you are instructed that in 'taking into consideration the uses to which the condemned tracts are to be subjected' you shall con-

sider only such uses relating to a sewage disposal plant and a public street as could reasonably have been forseen on the date of taking, March 18, 1966, and only such uses as the Plaintiff, in all reasonable probability will make on the ten acre and 2.04 acre sites."

We overrule this point of error for the same reasons we gave for overruling the first thirteen points.

Appellant's sixteenth point of error alleges that the trial court erred in overruling its objections to this instruction given to the jury in the court's charge:

"You are instructed that the surface estate of the ten (10) acre tract of land condemned by the City of Pearland in this case and described as Tract One in the evidence before you will be used by the City of Pearland as a site for a sewerage disposal plant and you are to presume that the City of Pearland will exercise its rights and use and enjoy this property to the full extent for such a sewerage disposal plant."

This instruction was placed immediately before Special Issue No. 4 in the court's charge. That issue inquired whether the market value of the landowners' remainder (810.724 acres) was decreased as a result of the condemnation by the City.

The City's objections to the instruction were:

1. It is is a general charge and not an instruction explanatory of any issue submitted.

2. It is vague and indefinite as to meaning of exercising rights and using and enjoying the property to the full extent.

3. It is a comment on the weight of the evidence as it assumes that to use the site the City must cover the entire tract with structures devoted exclusively to disposal of sewage.

4. It is a comment on the weight of the evidence as it prohibits the jury from considering the uses the City may lawfully make on the 10-acre tract incidental to its primary use, such as walks, drives, open spaces, etc.

5. It is a comment on the weight of the evidence because it informs the jury that no use may be made of the property except for erection of structures for disposal of sewage.

6. It requires the jury to award damages for uses not reasonably foreseen on the date of taking and for uses of the site the City will probably not make.

7. The instruction requires the jury to award damages to the defendants on the basis of a hypothetical situation, and a speculative situation in that no addition or expansion to the present sewage disposal plant or a new sewage disposal plant can be legally constructed on the 10-acre site unless and until the plans and specifications therefor have been approved by the State Department of Health of the State of Texas, and a permit for the discharge of effluent into the Clear Creek has been obtained from the Texas Water Quality Board.

8. The instruction requires the jury to value the remainder of the defendants' land after the taking on the basis of a hypothetical and speculative situation, and by so doing, ignores all the relevant facts as to the reasonable probability of uses which will be made of the property, the uses which are reasonably foreseeable at the time of the taking, and the uses which will be made in the future.

We think the submission of the instruction was not error, and if error, was not reversible error. We also believe it would not have been erroneous for the trial court to have refused the instruction and to have determined the matter of what may and may not be considered by the jury by means of the admission and exclusion of testimony. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, Ibid. 979 (1936).

We find the instruction to be a correct statement of the law. Similar instructions have been requested in two recent Texas cases. In State v. Frost, 456 S.W.2d 245, at p. 256 (Tex.Civ.App.1970, writ ref. n. r. e.), Justice Barron wrote that the court saw no reversible error standing alone in the giving of instruction number 4 in that case. That instruction, however, went into detail as to certain rights of ingress and egress, and the opinion stated that the instruction accomplished little and may have been harmful by reason of its lack of clarity on the question of the right of ingress and egress.

In Wiseman v. State, supra, Chief Justice Barrow, speaking for the San Antonio Court of Civil Appeals, stated that the trial court did not err in refusing an instruction similar to that given in our case, pointing out that by trial amendment the condemnor expressly reserved to the landowners the right of ingress and egress to the remainder. By virtue of this limitation on the condemnors' title, it was proper to show that approaches would be constructed to connect with the landowners' present driveway, and any subsequent interference with their right of reasonable access at this point would result in a cause of action for them.

In our case the City introduced photographs of the sewage plant already in use on the 10-acre tract, and the condemnees were entitled, as we have noted, to have the damages to their remainder determined on the basis of the legal rights acquired by the City. Absent an instruction this is a difficult concept to convey. We find in the instruction no improper comment on the weight of the evidence. We consider the extent of the use of the tract as described in the instruction to be less difficult to envision than the extent of its use which might depend on factors such as population growth in the area, availability of permits, etc.

Appellant's seventeenth and eighteenth points of error are "no evidence" and "against the great weight of the evidence" points as to the jury finding in answer to Special Issue No. 4 that the remainder of the landowners' 810.724-acre tract was decreased in market value as a result of the City's condemnation. Appellant's nineteenth and twentieth points make the same two complaints with respect to the jury finding in answer to Special Issue No. 6 that the market value of the remainder immediately after condemnation of the described parcels of land on March 18, 1966 was $1,640,592.80 (a decrease of $143,000.).

In passing on the great weight points we consider all the evidence, and in passing on the no evidence points we consider only that which supports the jury findings. As restricted by the terms of Special Issue No. 6, which we earlier set out in full, the jury was not to consider in answering the issue any increase or decrease in value of the remainder brought about by benefits or injuries which these landowners received in common with the community generally and not peculiar to and connected with their ownership, use and enjoyment of their remainder.

The City covers approximately 9000 acres. The 10-acre site was taken to provide a plant to handle sewage from 6000 of them, and all those 6000 acres stand to benefit from the sewage plant. One of the City's witnesses admitted that the only difference between the condemnees' property and that of their neighbors' is that the condemnees now have a substandard subdivision road and a sewage disposal plant on a ten acre tract. The witness later revised this testimony, but the jury was still entitled to consider it. There was testimony in the record by three qualified real estate appraisal experts: John Alexander, one of the parties to the suit, professional appraiser Charles Osenbaugh and Marvin McGlothery, a real estate dealer in Pearland. Each of them testified that in his opinion about 98 to 125 acres of the landowners' property around the sewer disposal plant would be reduced in value by the plant's

disagreeable odor, noisy operation and unsightly appearance, making such land adjoining the plant less valuable for its highest and best use, development as a residential subdivision (now or in the future). Their valuation of the remainder ranged from $1,458,948. to $1,618,592.80, and their testimony as to the damages to the remainder ranged from $98,400. to $165,000. The jury's findings were well within the range of the evidence adduced, since Alexander testified that the remainder was worth $1,783,592.80 before the taking. The City's witnesses testified that the landowners' remainder would be enhanced in value, so that issues were sharply drawn.

The fact that the landowners do not now have to build a sewage disposal plant in order to subdivide their remainder for residences does not of itself require a holding that the plant constitutes a special benefit to the landowners. We hold that the findings in question were not so against the great weight of the evidence as to be clearly wrong. It follows that we find there was some evidence to support the findings.

The appellant's twenty-first point complains of the trial court's refusal to grant its motion for mistrial based on a statement made to the trial judge, by attorney for one of the appellees, within the hearing of the jury that everyone but the City of Pearland would agree that a sewage disposal plant would decrease the value of land.

We overrule the point. Counsel for the appellant moved for a mistrial. He did not ask for an instruction to the jury. The trial judge overruled the motion for mistrial, but he asked that such statements be not made again. The statement was clearly improper, but we cannot say that it was so prejudicial that its effect could not have been allayed by an instruction from the trial judge.

Appellant's next three points assert that the trial court erred in overruling its challenges for cause of jurors Grandjean, Pyle and Lara, respectively. During the voir dire examination of prospective jurors, these three indicated either that they believed that the location of a sewage plant decreased the value of the adjoining land or that they were prejudiced against the condemning of privately owned property. Each of them, when questioned by the trial judge and by counsel for one of the appellees, stated that he would abide by the court's instructions and decide the case only on the evidence offered in court. With respect to veniremen Grandjean and Pyle, the record reflects that the City exercised peremptory challenges to strike their names from the list after the trial court overruled its challenges for cause as to them, but it does not show harm or prejudice by showing that as a result of the trial court's action the appellant was required to take an objectionable person on the jury or that it ever so advised the trial court. The only statement touching on this point is found in the assertion in appellant's brief that it would have exercised the challenges used against Grandjean and Pyle to strike two other jurors if the challenges for cause had been sustained. No harm having been shown under the points concerning Grandjean and Pyle, these two points of error are overruled. Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764 (1964); Texas Employers Insurance Assn. v. Shropshire, 343 S.W.2d 772 (Tex. Civ.App.1961, writ ref. n. r. e.); Ralston v. Toomey, 246 S.W.2d 308 (Tex.Civ.App. 1951, writ ref. n. r. e.); 3 McDonald Texas Civil Practice (1970) 161, § 11.11.

The third venireman challenged for cause was a man named Lara, who expressed his opposition to the condemning of any property. After appellant's counsel challenged Lara for cause, an opposing counsel and the trial judge explained to Lara that there was no question about the City's right to condemn the appellees' property, that the appellees had agreed that it had such right and that it was the juror's duty to decide from the evidence offered

in this case the market value of the property in question, putting aside any question about the City's right to condemn. Lara stated that he would do this and would abide by the charge and the rules given him by the court. He said he would go by the evidence and award whatever was reasonable. The appellant questioned Lara further, but did not repeat its challenge for cause, nor did it use a peremptory challenge on him. It used its third peremptory challenge against another venireman, however, and Lara served as a juror in the trial of this case.

■ We think Lara was not disqualified per se by the provisions of Article 2134, Sec. 4, Vernon's Annotated Texas Civil Statutes. His testimony contained manifest contradictions, and thus raised a fact issue as to whether he was prejudiced. We cannot say that his statements conclusively establish a state of mind that would disqualify him as a matter of law; the trial judge had an opportunity to observe him and was in a better position than we are to determine whether he was prejudiced. Compton v. Henrie, 364 S.W.2d 179 (Tex.Sup.1963); Bashrum v. Vinson, 330 S.W.2d 538 (Tex.Civ.App.1959, writ ref. n. r. e.); Ratcliff v. Bruce, 423 S.W.2d 614 (Tex.Civ.App.1968, writ ref. n. r. e., certiorari den. 393 U.S. 848, 89 S.Ct. 134, 21 L. Ed.2d 118). There is nothing in the record from the trial court other than the voir dire proceedings touching upon the question of Lara's qualification to serve as a juror.

■ Appellant's twenty-fifth point of error complains about several statements made by Mr. Thomas, attorney for one of the landowners, in his closing argument to the jury. We have carefully examined each of them in context and have concluded that although a few were improper, none was so prejudicial as to be incurable. Otis Elevator Co. v. Wood, 436 S.W.2d 324 (Tex.Sup.1968). Appellant's counsel did not make a timely objection to any of them and thus give the trial court an opportunity

to cure any of the improper arguments by instructing the jury to disregard them. The trial court did not err in overruling the City's motion for a mistrial. We do not believe the statements were calculated to cause and probably did cause the rendition of an improper verdict. No useful purpose would be served in setting out the statements.

■ The City's next point of error complains that the trial court erred in overruling its request to require Mr. Thomas to let the City's counsel see a newspaper clipping to which he referred when questioning a witness and implied that the newspaper article in question stated that the City was having problems with the Water Quality Board. The request to see the article was directed to Mr. Thomas, not to the trial judge. Mr. Thomas then stated to the court that the request was not proper and the trial court stated that since nothing had been introduced, the request was overruled. We think the City's counsel should have been permitted to see the article in view of Mr. Thomas' having apparently made references to its contents, but that the error was harmless.

The appellant's twenty-seventh point is that the trial court erred in excluding the testimony of John Alexander relating to the property owned by the landowners across Clear Creek from the 10-acre tract and their having previously sought only a nominal consideration when they offered an 8-acre site on such property to the City for a sewage disposal plant.

■ Mr. Alexander testified, in a bill of exception, that across Clear Creek from the 10-acre tract and 600 or 700 feet south of it is a site where the landowners proposed, in about 1965, to sell as much as an 8-acre tract for a sewer plant for $400. or $500. Several different people own tracts of land across Clear Creek from the 10-acre tract. The Alexanders had spent $6,000. or $7,000. on legal fees to work out a place with the City for a sewer plant. It wasn't until after the landowners had made

this proposal that the City first authorized the acquisition of the 10-acre site.

We think the trial judge did not abuse his discretion in refusing to admit this testimony. At any rate reversible error has not been shown. The case of City of Cedar Hill v. Wheeler, 326 S.W.2d 236 (Tex.Civ.App.1959, writ ref. n. r. e.) can be distinguished on the facts. In that case the tract offered was the same one which was later condemned. Not so in our case; here the land offered for $400. or $500. was across Clear Creek from the tract taken and some 600 to 700 feet south of it. It was not shown to be comparable. The record does not show whether the landowners owned any other land on that side of Clear Creek. If they owned none, they would be consistent in not asserting any damage to land across the creek because in this case they have not claimed damages to their land separated from the plant by the creek.

Also, our courts hold that evidence of sales of comparable property made to those having the power of eminent domain are not admissible in a condemnation suit because they do not meet the willing seller-willing buyer concept; they are made under a direct or implied threat of condemnation and, theoretically at least, are not free and voluntary. Gomez Leon v. State, 426 S.W.2d 562 (Tex.Sup.1968). We think this principle of law is applicable to the testimony offered in the bill of exception in this case and that it rested within the discretion of the trial judge to weigh this basis for excluding the evidence against the basis for admitting it of prior inconsistent statement or position.

In its twenty-eighth point the appellant alleges that it was error for the trial court to overrule its motion and request that the jury be taken to the land in question so it could determine for itself the character of the odors and noise, if any, at and near the plant site. There is no doubt that the evidence as to whether the sewer plant in question emits objectionable odors and noise was sharply conflicting.

"Whether the trial judge in Texas today has discretion to grant a jury view over the objection of a party * * * remains an open question." Comment by Ewing Werlein, Jr., 40 Texas Law Review 246 (1961). See also 2 McCormick & Ray, Texas Law of Evidence 316 § 1463. Our Supreme Court has not directly passed on the matter since 1941 when, acting under Article 1731a, V.A.C.S., it listed Article 2175 as one of those repealed. The latter article had been held to repeal common law jury view in Texas.

It is generally considered, however, that jury view in Texas is permissible at the discretion of the trial court only with consent of all parties to the suit. Werlein, supra; Mullins v. State, 256 S.W.2d 454 (Tex.Civ.App.1953, no writ); Conner v. Parker, 181 S.W.2d 873 (Tex. Civ.App.1944, no writ); Bradshaw v. White, 294 S.W.2d 736 (Tex.Civ.App.1956, writ ref. n. r. e.) and cases cited in the latter opinion.

We hold that the trial court did not err in declining to permit jury view in this case over the landowners' objection.

Appellant's last point of error is that the trial court erred in admitting the testimony of John Alexander as to his family history. The objection was made only to a question asking the names of Mr. Alexander's children. We find no basis for concluding that the City's rights were prejudiced by the landowner's giving their names. If the ruling was error, it certainly was harmless. Rule 434, Texas Rules of Civil Procedure.

Affirmed.