IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-004-CV




STATE OF TEXAS,



 APPELLANT


vs.





A. R. ENOCHS AND WIFE, ERLENE PATTON ENOCHS,


AND SOUTHLAND CORPORATION,




 APPELLEES



 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY



NO. 2055, HONORABLE GUY HERMAN, JUDGE PRESIDING



 




 This is a statutory condemnation action in which the State, as condemnor, acquired
by "whole taking" the title to two legally subdivided lots located on U.S. 290 West, owned by the
Enochs. The westernmost lot was improved with a 7-Eleven convenience store and fueling
facilities subject to a long-term lease with Southland Corporation. The easternmost lot was
effectively vacant and available for development, subject to environmental restrictions. Following
a jury trial and damage award, the trial court rendered judgment. The State appeals alleging nine
points of error. We will affirm the judgment of the trial court.



FAILURE TO EXCLUDE WITNESSES



 In its first point of error, the State contends that the trial court erred:



 a. By allowing Enochs to call and compel the testimony of William R.
Carson, who, though designated an expert by the State had never been designated
by Enochs as an expert witness in response to a proper request.


 b. By allowing Enochs to call and present testimony of Mike Irvin over the
objection of the State that he was not and had not been designated as either an
expert witness or a witness having knowledge of facts pursuant to a proper request.


 c. By allowing Enochs to present expert value testimony which was
changed within 30 days of trial. The changed testimony was evidenced by a
supplemental response to interrogatories filed within 30 days of trial without
obtaining leave of court to file same and without having a hearing to determine
good cause for late supplementation.


 During the pre-trial discovery of this cause both the Enochs and Southland were
active participants on behalf of the condemnees. Although the Enochs owned the land, Southland
had a long-term ground lease on part of the property, the value of which would have to be
determined and allocated to Southland in the final condemnation damage award.

 The record reveals that the Enochs and the State exchanged normal discovery,
including written interrogatories and requests for production. However, the State sought only
very limited discovery from Southland. In response to a request for production, and subject to
a confidentiality agreement, Southland provided the other parties with sales figures for the store
to be acquired, as well as figures for a number of other stores in the Austin area. It also provided
the oral deposition of its designated corporate representative, Mike Irvin, by informal agreement
with the State's lawyer. The State never sent Southland any written interrogatories or took any
other action to discover the identity of Southland's witnesses or to restrict the testimony of any
witness which Southland might call.

 Until the day of the trial, Southland and the Enochs had adverse interests in the
allocation dispute regarding the damage proceeds of this condemnation action. The Enochs sent
written interrogatories to Southland which were due to be answered on the date of trial. On that
date, the allocation disagreement between the Enochs and Southland was settled and the Enochs
withdrew the discovery requests, with permission of the Court.

 The allocation agreement between the Enochs and Southland was announced on the
record, in open court in the presence of all parties, as a Rule 11 stipulation of counsel. See Tex.
R. Civ. P. 11. As a part of this Rule 11 agreement announced in open court in the presence of
all parties, Southland specifically authorized John McClish, the Enochs' attorney, to represent it
through the trial and to call witnesses on its behalf. The State did not object to this stipulation, and it was accepted by the trial judge when he excused Southland's previous
lawyer from participation in the case.

 During the trial when the witnesses were called, the State voiced its objections,
which were overruled by the trial court. The State contends that the trial court erred in
disregarding the mandatory exclusionary rule contained in Rule 166b(6) and Rule 215(5) of the
Texas Rules of Civil Procedure. We disagree.

 The record clearly reveals that no formal discovery was undertaken by the State
to identify the witnesses who might be called on behalf of Southland. Contrary to the State's
allegations, Southland was still very much a party during the trial of the case. Although it had
resolved its differences with the Enochs, Southland's valuable leasehold interest was still being
taken by the State as condemnor. By virtue of the parties' Rule 11 stipulation, Southland was
represented during the trial by John McClish and by its corporate representative, Mike Irvin. 
Southland had a due-process right to call witnesses in its behalf, unlimited by any duty to make
or supplement discovery. Although the agreement between Southland and the Enochs had
extinguished the adversity between them, it had certainly not obliterated their separate identities. 
Because the State failed to send written interrogatories or other formal discovery requests to
impose discovery duties on Southland, the attorney representing Southland was free to call any
competent witness and elicit any relevant testimony. The admission or exclusion of witness
testimony during a trial is left to the sound discretion of the trial judge. The trial court's action
in allowing one of the condemnees, Southland, to call the challenged witnesses was not an abuse
of discretion. The State's first point of error is overruled.



DAMAGE OFFSET -- PREJUDGMENT INTEREST



 Following the State's eminent domain proceeding, the special commissioners
awarded the condemnees $935,000. The award of the special commissioners was filed with the
trial judge on November 14, 1991; it allocated 74% of the amount awarded to the Enochs and
26% to the Southland Corporation. Objections to the award were timely filed by all parties. On January 15, 1992, the State deposited the amount of the special commissioners' award of
$935,000 into the registry of the court.

 On July 9, 1992, the State filed its First Amended Original Petition. In Paragraph
IV, the State alleged that although it became entitled to possession as of January 15, 1992, the
condemnees actually had the continued use and occupancy from that date until the present date. 
The State then alleged it was entitled to an offset for the amount of the value of the use of the
property by the condemnees.

 Prior to trial, the condemnees specially excepted to the State's claim for the
reasonable value for the use of the property, and the said special exception was sustained by the
trial court. An order was entered severing the State's claim for the reasonable rental value of the
property.

 In the final judgment, the trial court awarded the condemnees prejudgment interest
for the difference between the deposited special commissioners' award and the final amount
awarded by the jury.

 In its second point of error, the State complains of the failure of the trial court to
award it an offset for the rental value of the condemned property during the pendency of this court
action.

 Section 21.021 of the Texas Property Code provides that the State may obtain
possession pending further litigation if it deposits with the court the amount of money awarded
by the special commissioners. Tex. Prop. Code Ann. § 21.021(a)(2) (West 1984). The State
admits in this Court and in its pleadings in the trial court that it had the "right" to take possession
of the condemned property at any time after having deposited the special commissioners' award. 
However, the State argues that because it voluntarily chose not to exercise its "right to possession"
that the trial court erred in not applying a rental offset at least to the prejudgment interest award. 
We reject this argument and sustain the action of the trial court. The longstanding rule of Texas
courts forbids the offset being sought by the State.



The probability that the appropriator will not exercise, or the fact that there is no
present intention of exercising, to the full extent the right acquired, should not be
considered in reduction of the damages, where there is nothing to prevent a full
exercise of such rights, since the presumption is that the appropriator will exercise
his rights and use and enjoy the property taken to the full extent. This rule has
been consistently followed in this State.


Wiseman v. State, 406 S.W.2d 253, 255 (Tex. Civ. App.--San Antonio 1966, writ ref'd n.r.e.)
(citations omitted).

 The only authority cited by the State is totally consistent with this well-established
rule of law. In Brazos River Auth. v. Adkisson, 173 S.W.2d 294 (Tex. Civ. App.--Eastland 1943,
writ ref'd), the parties agreed that the condemnee would be allowed to continue production of oil
and gas from the leasehold estate acquired while the reservoir was allowed to fill. Under this
arrangement, the net proceeds from these operations were allowed as an offset against the
landowner's statutory award of interest. Id. at 302. No such understanding was ever suggested
in this case. By its own admission, the State acquired the right to possession to the property on
January 15, 1992. It voluntarily chose not to exercise this right but, instead, tried to negotiate
a leasehold arrangement with the existing tenant, Southland. Having failed to do so, the State
attempted to recover an offset through the condemnation proceeding. Based upon the
overwhelming weight of Texas case authority, the trial court correctly determined, as a matter of
law, not to allow the offset.

 The State also assails the trial court's action in severing this dispute from the
balance of the case. Since the trial court decided this matter on special exceptions, it was
appropriate to sever this legal dispute from the balance of the factual controversy to be decided
by the trial jury. The State's second point of error is overruled.

 In a related third point of error, the State complains that the trial court awarded the
condemnees prejudgment interest from the date of the constructive taking to the date of trial,
despite the fact that the condemnees remained in uninterrupted possession of the property.

 As a part of the constitutional guarantee of adequate compensation for a taking of
property, a condemnee is entitled to prejudgment interest on the amount by which the eventual
judgment exceeds the award of the commissioners, calculated from the date of deposit. See City
of Houston v. Wolf, 712 S.W.2d 228, 230 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd). 
In this writ-refused opinion, the court disapproved and overruled the language and rationale of
City of Austin v. Foster, 623 S.W.2d 672 (Tex. Civ. App.--Austin 1981, writ ref'd n.r.e.), on
which the State relies. The Wolf holding was subsequently modified and codified into the general
condemnation statute. See Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 7 (West Supp. 1993). 
Therefore, because the condemnees were entitled to prejudgment interest and the State was not
entitled to any offset, we overrule the State's third point of error.



OTHER POINTS OF ERROR



 In its fourth point of error, the State contends that the trial court erred in excluding
from direct evidence a foreclosure sale and a lease agreement that was some seven years old. 
While the State's appraisal expert was testifying regarding the market value of the condemned
property, the State sought to introduce by direct testimony of the expert a foreclosure sale and the
terms of a lease that was entered into in 1984. The trial court excluded the testimony and the
State assigns error. At the outset, the State concedes that prior to the adoption of Rules 703 and
705 of the Texas Rules of Evidence, the aforementioned testimony was clearly inadmissible. 
However, the State argues that subsequent to the rules of evidence, the expert witness is entitled
to testify to "facts and data reasonably relied upon by experts in their field, even though not
admissible [in] evidence." Under the facts of this case, we disagree.

 Regarding the foreclosure sale, the State's appraisal witness repeatedly admitted
that this transaction was made under duress, was not indicative of market value, and would not
be given weight by a competent appraiser. A transaction made under duress is not relevant to
market value and is not admissible in a condemnation case, for any purpose, as a matter of well-settled law. See City of Austin v. Flink, 454 S.W.2d 389, 391 (Tex. 1970); Bradfield v. State,
525 S.W.2d 438, 440 (Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.)

 Regarding the lease agreement, the evidence indicated that the lease was over seven
years old on the date of taking or valuation date. Caselaw has generally excluded evidence of
transactions occurring more than five years before the date of taking. See Board of Regents Univ.
of Tex. v. Puett, 519 S.W.2d 667, 672 (Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.).

 The State relies heavily on our opinion in State v. Resolution Trust Corp., 827
S.W.2d 106 (Tex. App.--Austin 1992, writ denied). The State's reliance on Resolution Trust is
misplaced. That case dealt with unconsummated offers to purchase property. Like the remote
lease and foreclosure sale at issue, such offers have been traditionally excluded as unreliable. We
specifically noted, in the first sentence of our discussion, that the terms of the offers themselves
were not admitted into the evidence. Id. at 108. The issue in Resolution Trust was whether a
qualified expert's opinion should be excluded in its entirety because it was based, in part, upon
data that was not itself, admissible. Id. We applied the plain words of the Rules of Evidence and
concluded that reliance on the offers did not require total exclusion of the appraiser's testimony. 
Id. We did not discuss or address the issue of whether it would have been error to allow the
witness to testify, on direct examination, about unconsummated offers to buy or sell.

 The appellate courts that have addressed this issue have held that this direct
evidence, like others, rests within the sound discretion of the trial court:



Texas Rule of Civil Evidence 705 states that an expert may disclose the facts or
data underlying his opinion. However, the use of the permissive word "may" does
not indicate an absolute right of the expert to disclose all of the facts and
underlying data under all circumstances. The better judicial position is not to
allow the affirmative admission of otherwise inadmissible matters merely because
such matters happen to be underlying data upon which an expert relies.


Beavers v. Northrop Worldwide Aircraft, 821 S.W.2d 669, 674 (Tex. App.--Amarillo 1991, writ
denied); see also First Southwest Lloyds Ins. v. MacDowell, 769 S.W.2d 954, 957-58 (Tex.
App.--Texarkana 1989, writ denied). The trial court did not abuse its discretion in rejecting the
inadmissible evidence even though it was being proffered by the State's appraisal witness. The
State's fourth point of error is overruled.

 In its next four points of error, five through eight, the State complains about the
trial court's charge and the failure to instruct the jury as to certain items. In general, the State
contends that the condemnees were allowed to introduce inadmissible evidence of "business
profits" in the trial. The State further alleges that the trial court erred in failing to instruct the jury
on the proper elements of condemnation damages. We reject the State's argument.

 A condemnee is entitled to prove a high volume of sales, including gasoline sales,
to support expert testimony regarding the market value of the condemned property. State v.
Watson Oil, Inc., 738 S.W.2d 25, 27-28 (Tex. App.--Texarkana 1987, writ denied). While it is
true that lost business profits may not be recovered as a separate item of damages in addition to
the market value of the condemned property, it is equally true that:



Evidence of lost profits may be admitted as bearing upon the value of the land
taken or the diminution in value of the remainder, or as substantiating opinion
evidence of those values.


State v. Sungrowth Ltd., 713 S.W.2d 175, 177 (Tex. App.--Austin 1986, writ ref'd n.r.e.); see
also City of Dallas v. Priolo, 242 S.W.2d 176, 179 (Tex. 1951); State v. Zaruba, 418 S.W.2d
499, 503 (Tex. 1967).

 Our review of the record indicates that the condemnees tendered evidence of
impressive sales volumes to prove the desirability of their property for the purposes to which it
was devoted and to refute the State's contention that the improvements were not desirable because
of their age and technological obsolescence. On this basis, the evidence was both relevant and
admissible and the trial court did not err in admitting the evidence and allowing the jury to
consider it. The State's points of error five through eight are overruled.

 In its ninth point of error, the State contends that cumulative errors of the court
resulted in an improper judgment. Finding no error, we overrule the State's final point of error
and affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: September 15, 1993

Do Not Publish